

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
        **JUDGE**

**LETTER OPINION**

January 29, 2009

Randi W. Kochman
Steven I. Adler
Cole, Schotz, Meisel, Forman & Leonard, PA
Court Plaza North
25 Main Street
Hackensack, NJ 07601
(*Attorneys for Plaintiffs Robert Barnello, Frederick F. Farrell, and Lance Sakowski on behalf of themselves and all others similarly situated*)

Michael T. Grosso
William P. Mclane
Littler Mendelson PC
One Newark Center, 8th Floor
Newark, NJ 07102
(*Attorneys for Defendant AGC Chemicals Americas, Inc.*)

> Re:   Barnello et al. v. AGC Chemicals Americas, Inc. et al.
>       <u>Civil Action No. 2:08-CV-03505 (WJM) (MF)</u>

Dear Counsel:

      This matter comes before the Court on Defendant AGC Chemicals Americas, Inc.'s ("AGC") motion to dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, or in the alternative to strike portions of the Complaint pursuant to Fed. R. Civ. P. 12(f). The Court did not hold oral argument. Fed. R. Civ. P. 78. For the reasons stated below, AGC's motion to dismiss Plaintiffs'

Complaint is **DENIED** with regards to Counts One, Three, and Five.  The Court grants AGC's motion to dismiss Count Two.[1]

## BACKGROUND

AGC is a wholly owned subsidiary of the Asahi Glass family, a $10 billion multi-national corporation and one of the world's largest manufacturers of chemical products, electronic displays, and glass.  (Compl. ¶ 5.)  Headquartered in Exton, Pennsylvania, AGC operates plants in various locations including England and Japan.  AGC previously maintained a plant in Bayonne, New Jersey, which closed in March 2008.  (*Id.* at ¶ 6.)

Prior to closing, Plaintiffs worked as non-exempt union employees at AGC's Bayonne plant.  (*Id.* at ¶ 7.)  Robert Barnello and Frederick Farrell were autoclave operators in the Autoclave Department.  Lance Sakowski worked in the Finishing Department, as well as the Autoclave Department from August 2005 to January 2007.  (*Id.*)

Plaintiffs allege that AGC failed to pay non-exempt employees in the Autoclave, Production, Finishing, and Maintenance areas for required time outside of their regularly scheduled shifts.  (*Id.* at ¶ 13.)  Specifically, Plaintiffs contend that AGC required non-exempt employees in the Autoclave and Finishing Departments to start their jobs each day at least one-half hour before their scheduled shifts.  During this time, workers donned special clothing and attended pre-shift meetings.  Employees in the Autoclave Department also familiarized themselves with then-current state of the production cycle, smoothing the transition between shifts.  (*Id.* at ¶¶ 14, 16.)

In the fall of 2006, Plaintiffs maintain that Sakowski objected to numerous AGC supervisors, including training supervisor Ken LaConte, about the company's refusal to pay employees for pre and post-shift time relieving other employees and donning special required clothing.  (*Id.* at ¶ 29.)  Shortly after voicing these concerns to LaConte, shift supervisor Scott Quinn began scrutinizing Sakowski closely, literally following Sakowski through the plant and watching his every move.  (*Id.* at ¶ 30.)

---

[1] AGC's Notice of Motion requests a dismissal of Plaintiffs' Complaint on all counts.  In addition, AGC sought to strike Plaintiffs' demand for punitive damages in Counts One, Two, and Four pursuant to Fed. R. Civ. P. 12(f).  Plaintiffs, in their Opposition, voluntarily dismissed Count Four, as well as the references to punitive damages in Counts One, Two, and Four.  Therefore, the Court must determine whether Plaintiffs' Complaint should be dismissed with regards to Counts One, Two, Three, and Five.

After lodging these complaints, in early 2007, AGC fired Sakowski. AGC premised the firing on the manner in which Sakowski pulled the gas from the autoclave after an aborted batch. Plaintiffs allege that other employees engaged in similar behavior without termination. (*Id.* ¶¶ 31-32.)

Plaintiffs filed the present collective and class action on July 14, 2008. In the Complaint, Plaintiffs seek to proceed as a collective action under 29 U.S.C. § 216(b) for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and to certify a class action under N.J. Ct. R. 4:32-1 *et seq.*, for violations of the New Jersey Wage and Hour Laws and Regulations ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, as a result of AGC's refusal to compensate Plaintiffs for work beyond their scheduled shifts. Plaintiffs also bring two individual claims on behalf of Lance Sakowski arising out of his termination. Plaintiffs allege that Sakowski's termination violated the FLSA's discrimination and retaliatory provision, 29 U.S.C. § 215(a)(3), as well as mandates of public policy under the judicially-created cause of action for retaliatory discharge first articulated by the New Jersey Supreme Court in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). On August 29, 2008, AGC filed the instant motion seeking a dismissal, which Plaintiffs oppose.

## **STANDARD OF REVIEW**

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L.Ed. 2d 343 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed. 2d 59 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a

speculative level. *See id.* at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

## DISCUSSION

**A.   Collective Action under the FLSA**

In Count One, Plaintiffs request to proceed as a collective action, under 29 U.S.C. § 216(b), as a result of AGC's refusal to pay non-exempt employees for hours worked outside of their regularly scheduled shifts. Specifically, Plaintiffs allege that:

> AGC and Johns Doe[sic], violated, among other things, the FLSA by, *inter alia*, engaging in a pattern and practice of failing to compensate Plaintiffs for all hours of work beyond those worked during their schedules[sic] shifts including, but not limited to, overtime hours at the rate of 1.5 times their regular hourly rates and certain double time.

(Compl. ¶ 35.) Plaintiffs demand damages and liquidated damages, including reasonable attorneys' fees, cost, and interest. (*Id.* at ¶ 37.)

Congress passed the FLSA in 1938 in order to "achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S. Ct. 698, 88 L. Ed. 949 (1944). The FLSA ensures that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). If an employer fails to pay required overtime, the employer "shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer is generally liable for two years of damages for non-willful violations and three years of damages for willful violations. *See* 29 U.S.C. § 255(a).

4

In the case at bar, Plaintiffs sufficiently plead a cause of action under the FLSA. Plaintiffs seek "overtime hours at the rate of 1.5 times their regular hourly rates" for "all hours work[ed] beyond those worked during their schedule[d] shifts." Since Plaintiffs claim that AGC violated the FLSA, the phrase "all hours work[ed] beyond those worked during their schedule[d] shifts including, but not limited to, overtime" is construed to mean all hours worked in excess of forty hours in a workweek, as explicitly stated in § 207(a)(1).

Even in light of the foregoing, AGC contends that Plaintiffs' claim should be dismissed because Plaintiffs failed to comply with the grievance procedures set forth in the CBA. AGC relies on the Third Circuit's decision in *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990), to support this argument.

In *Vadino*, an employee asserted two claims against his former employer, a breach of certain wage provisions under the relevant CBA and an associated claim for overtime under the FLSA. *Id.* at 256. The employee alleged that the employer breached the CBA by failing to pay him the rate of a journeyman, while also claiming that he deserved overtime under the FLSA not at his then-current rate, but at the higher rate of a journeyman. *Id.* at 257. Affirming the district court's order granting summary judgment for the employer, the Third Circuit held that union-represented employees cannot proceed directly to federal court with an FLSA claim where the claim rests on an interpretation of a disputed provision of the underlying CBA. *Id.* at 266. Since the FLSA does not provide a means for adjudicating disputes under a CBA, such disputes must first be resolved pursuant to the procedures contemplated under the Labor-Management Relations Act, 29 U.S.C. § 185 *et seq.*, specifically grievance, arbitration, and, when permissible a section 301 lawsuit. *Id.* at 266-67.

The present case, however, is distinguishable from *Vadino*. Plaintiffs do not seek a determination as to the appropriate wage rate under the CBA. Instead, Plaintiffs focus on their statutory right to compensation under the FLSA. Not only does the Complaint lack any direct reference to the CBA, Plaintiffs explicitly state in their moving papers that "Plaintiffs do not claim that they are owed compensation pursuant to the CBA" and further emphasize that their "claims stem solely from their alleged statutory right to compensation for time worked under the FLSA . . . , and if applicable, to over time provided by the FLSA . . . ." (Pls. Br. in Opp'n to Def. Mot. to Dismis 15.)

Accordingly, the Court will strike the phrase "double time" from Count One of Plaintiffs' Complaint as impertinent and likely to confuse the issues in this matter. "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter." Fed. R. Civ. P. 12(f); *see also Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (stating that federal courts may strike portions of the pleadings when the allegations confuse the issues in the case).

AGC's motion to dismiss Count One of Plaintiffs' Complaint is therefore **DENIED** with the phrase "double time" stricken from Count One.

**B.     Class Action under New Jersey Wage and Hour Law**

In addition to pursuing an "opt-in" collective action under the FLSA, Plaintiffs seek to certify an "opt-out" class action under N.J. Ct. R. 4:32-1 *et seq*., for violations of the NJWHL.  AGC urges the Court to dismiss or strike Plaintiffs' NJWHL claim on the basis that FLSA opt-in collective actions and opt-out class action are inherently incompatible.  Alternatively, AGC contends that the Court should refuse to exercise supplemental jurisdiction.

Class actions under N.J. Ct. R. 4:32-1, like Rule 23 class actions, contain an opt-out provision, where putative class members automatically join the action unless they expressly opt-out.  *Compare* N.J. Ct. R. 4:32-2(2)(E) *with* Fed R. Civ. P. 23.  In stark contrast, actions brought under the FLSA proceed as "collective actions," which require plaintiffs to affirmatively opt-in to the action.  *See* 29 U.S.C. § 216(b).

Congress added the opt-in requirement following the FLSA's enactment.  Initially, the FLSA generated a tremendous amount of litigation.  Between July 1, 1946 and January 31, 1947, employees around the country filed 1,913 such actions under the FLSA.  93 Cong. Rec. 2,082 (1947).  In response, Congress passed the Portal-to-Portal Act of 1947, ch. 52, 61 Stat. 84 (codified as amended at 29 U.S.C. §§ 251-262 and amending 29 U.S.C. § 216(b)), to prevent plaintiffs from bringing class actions under the FLSA.  Congress included this requirement to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).  The amendment represented a "crucial policy decision" that sought to curb the excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, while at the same time maintain employees' rights.  *See Hoffman-La Roche*, 493 U.S. at 173; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306, 310 (3d Cir. 2003).

Relying on Congress's intent to bar plaintiffs from bringing class actions, several courts within this district have dismissed similar state law class allegations solely on the basis of the "inherent incompatibility" between collective actions under the FLSA and opt-in class actions.  *See*, e.g., *Evancho v. Sanofi-Aventis U.S.* Inc., Civ. No. 07-2266,

2007 WL 4546100 (D.N.J. Dec, 19, 2007); *Himmelman v. Continental Cas. Co.*, Civ. No. 06-166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006); *Herring v. Hewitt Associates, Inc.*, Civ. No. 06-267, 2006 WL 2347875 (D.N.J. Aug. 11, 2006); *Moeck v. Gray Supply Corp.*, Civ. No. 03-1950, 2006 WL 42368, at *3-6 (D.N.J. Jan. 6, 2006).

However, in light of Third Circuit precedent, the question of whether a plaintiff may assert an FLSA collective action and a state law class action concurrently in federal court must be analyzed through the rubric of supplemental jurisdiction. *See De Asencio*, 342 F.3d at 309-12; *see also Di Nardo v. Ned Stevens Gutter Cleaning & Installation, Inc.*, Civ. No. 07-5529, 2008 WL 565765, *1-2 (D.N.J. Feb. 28, 2008); *Freeman v. Hoffmann-LaRoche, Inc.*, Civ. No. 07-1503, 2007 WL 4440875, *2-4 (D.N.J. Dec. 18, 2007); *Hyman v. WM Financial Services, Inc.*, Civ. No. 06-4038, 2007 WL 1657392 (D.N.J. June 7, 2007).

Under 28 U.S.C. § 1367(c)(4), a court may decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Court finds that such a situation exists in this case. Here, Plaintiffs allege virtually identical claims under Count One and Count Two. The only difference between the two claims is that the Second Count relies on the opt-out class action devise afforded by Rule 4:32-1.[2] By advancing Count Two, Plaintiffs attempt to circumvent the FLSA's opt-in requirement, forcing AGC to defend an overtime action brought in federal court by plaintiffs with no real interest in the suit's outcome. *Hyman*, 2007 WL 1657392 at *6. Allowing Plaintiffs to engage in this tactic would defeat a

---

[2] A comparison of the two counts reveals the similarity. Count One states in full:

> AGC and Johns Doe [sic], violated, among other things, the FLSA by, *inter alia*, engaging in a pattern and practice of failing to compensate Plaintiffs for all hours of work beyond those worked during their schedules[sic] shifts including, but not limited to, overtime hours at the rate of 1.5 times their regular hourly rates and certain double time.

(Compl. ¶ 35.) Count Two states:

> Defendants, violated, among other things, the NJWHLR by, *inter alia*, engaging in a pattern and practice of failing to compensate Plaintiffs for all hours of work beyond those worked during their regular shifts including, but not limited to, overtime hours at the rate of 1.5 times their regular hourly rates and certain double time.

(Compl. ¶ 39.) Outside of swapping the FLSA for the NJWHL, the only difference between the two passages is that Count Two replaces "schedules[sic] shifts" with "regular shifts."

"crucial policy decision" of the FLSA, namely Congress's intent to avoid opt-out collective actions in favor of the opt-in requirement. *Moeck*, 2006 WL 42368 at *5. Accordingly, AGC's motion to dismiss Count Two is **GRANTED**.

**C.    Retaliation Claim under the FLSA**

Plaintiffs also bring an individual claim under the FLSA on behalf of Lance Sakowski. In Count Three, Plaintiffs allege the following:

> AGC discriminated and/or retaliated against Sakowski by, *inter alia,* firing him because he objected to the Company's widespread practice and/or policy of refusing to pay non-exempt employees for significant time that they worked before and after their regularly scheduled shifts.

(Compl. ¶ 43.) Plaintiffs do not assert that Sakowski filed a formal complaint against AGC concerning his right to overtime payments under the FLSA. Instead, Plaintiffs state that in the fall of 2006, Sakowski informally objected to numerous supervisors, including training supervisor Ken LaConte, regarding AGC's refusal to pay Sakowski and other employers for the pre and post-shift time during which they worked relieving other employees and donning required clothing. (*Id.* at ¶ 29.)

Beyond setting minimum standards for wage practices, the FLSA makes it unlawful for an employer

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Damages may include, without limitation, "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A willful violation of this provision also subjects the offender to criminal sanctions. *See* 29 U.S.C. § 216(a)

To establish a prima facie case of retaliatory discrimination under the FLSA, the plaintiff must show that: (1) the plaintiff engaged in protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action. *Scholly v. JMK Plastering, Inc.*, Civ. No. 07-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25,

2008). Although not directly addressed by the Third Circuit, informal complaints may be considered a protected activity under § 215. *See Scholly*, 2008 WL 2579729 at *3; *Chennisi v. Commc'n Const. Group, LLC.*, Civ. No. 04-4826, 2005 WL 387594, at *3 (E.D. Pa. Feb. 17, 2005); *Coyle v. Madden*, Civ. No. 03-4433, 2003 WL 22999222, at *4 (E.D. Pa. Dec. 17, 2003).

In the instant matter, Plaintiffs sufficiently allege that Sakowski's termination violated the FLSA's discrimination and retaliatory provision. Sakowski engaged in a protected activity by making several informal complaints to his supervisors, including Ken LaConte, about AGC's refusal to pay him overtime for time spent relieving other employees and donning special required clothing. (Compl. ¶ 29.) After voicing these concerns, shift supervisor Scott Quinn began following Sakowski, allegedly watching his every move. (*Id.* at ¶ 30.) Shortly thereafter, AGC took an adverse action against Sakowski by firing him based upon the manner in which he pulled the gas from the autoclave after an aborted batch. Other AGC employees engaged in similar behavior without retribution, establishing a causal connection between Sakowski's informal statements and his firing. (*Id.*) As such, AGC's motion to dismiss Count Three of Plaintiffs' Complaint is **DENIED**.

C.   **New Jersey *Pierce* Claim**

Finally, Plaintiffs bring on behalf of Lance Sakowski a claim for common law retaliatory discharge for violations of New Jersey public policy. In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (N.J. 1980), the New Jersey Supreme Court recognized that an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." An employee can prove such a wrongful discharge claim by "show[ing] that the retaliation is based on the employee's exercise of certain established rights, violating a clear mandate of public policy." *MacDougall v. Weichert*, 144 N.J. 380, 393, 677 A.2d 162, 168 (1996). "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 417 A.2d at 512.

Whether a plaintiff has established the existence of such a public policy is an issue of law. *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 187, 707 A.2d 1000, 1012 (1998). "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." *Id.* at 1013. The public policy must also be "clearly identified and firmly grounded . . . . A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." *MacDougall*, 677 A.2d at 167.

AGC maintains that Plaintiffs claim should be dismissed because Sakowski failed to complain about the company's refusal to pay employees for pre and post-shift work to an outside authority. In support of this argument, AGC relies on the New Jersey Supreme Court's decision in *Young v. Schering Corp.*, 141 N.J. 16, 17, 660 A.2d 1153, 1159 (1995), where the court stated in dicta that "[u]nder *Pierce* . . . there must be actual notification to a governmental body of illegal employer conduct."

In *Tartaglia v. UBS Painewebber Inc.*, ---- A.2d ----, 2008 WL 5274869 (N.J. Dec. 16, 2008), however, the New Jersey Supreme Court clarified its position in *Young*. The court explicitly determined that "[n]othing in *Pierce* . . . mandates an actual or even threatened external complaint as an element of the cause of action." *Id.* at *12. To establish a *Pierce* claim, "it requires . . . an expression by the employees of a disagreement with corporate policy, directive, or decision based on a clear mandate of public policy." *Id.* Moreover, the employee must make "a sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful." *Id.* "A direct complaint to senior corporate management would likely suffice, but a complaint to an immediate supervisor generally would not." *Id.*

In the instant matter, Plaintiffs sufficiently state a *Pierce* claim. Plaintiffs allege that Sakowski was wrongfully discharged after he voiced his concern with the company's policy of not paying overtime for hours worked relieving other employees and donning. Although Sakowski did not make a formal complaint to an outside agency, he sufficiently voiced his concern with AGC's wage and hour policy to numerous supervisors, including training supervisor Ken LaConte. (Compl. ¶ 29.) AGC supervisors had knowledge of Sakowski's complaints, as evidenced by the actions of shift supervisor Scott Quinn. After stating his request for overtime to Ken LaConte, Quinn followed Sakowski, watching his every move. (*Id.* at ¶ 30.)

Moreover, AGC's failure to pay wages for overtime violates a clear mandates of public policy. Under the NJWHL, it is "the public policy of the State . . . to protect [workers] as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being." N.J.S.A. 34:11-56a. As stated by the New Jersey Supreme Court in *Lane v. Holderman*, 23 N.J. 304, 317, 129 A.2d 8, 15 (1957), "regulations placing a premium upon 'overtime' assist in promoting the obtainment of a weekly recompense sufficient to maintain health."

Accordingly, Defendant's motion to dismiss Count Five is **DENIED**.

## CONCLUSION

For the reasons stated above, AGC's motion to dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), is **DENIED** with regards to Counts One, Three, and Five and **GRANTED** with regards to Count Two.  In addition, the phrase "double time" shall be stricken *sua sponte* pursuant to Fed. R. Civ. P. 12(f) from Count One.  An appropriate Order follows this Letter Opinion.


                    s/William J. Martini  
                    **William J. Martini, U.S.D.J.**